## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMIN ALLAWI ALI, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 1:23-cv-00576-RDM |
| MOHAMED BEN ZAYED AL-NAHYAN, *et al.*, | |
| *Defendants*. | |

### UAE DEFENDANTS' MOTION TO DISMISS

Defendants President H.H. Sheikh Mohamed bin Zayed Al Nahyan,[1] Prime Minister H.H. Sheikh Mohammed bin Rashid Al Maktoum, and Military Affairs Adviser to the President Lieutenant General H.E. Hamad Mohamed Thani Al Rumaithi, hereby move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), to dismiss the complaint (ECF No. 1) filed by Plaintiffs.  In support of this motion, Defendants respectfully refer this Court to the Memorandum of Law filed herewith.

WHEREFORE, Defendants respectfully request that the Court grant this motion and dismiss the complaint as to Defendants President H.H. Sheikh Mohamed bin Zayed Al Nahyan, Prime Minister H.H. Sheikh Mohammed bin Rashid Al Maktoum, and Lieutenant General H.E. Hamad Mohamed Thani Al Rumaithi, Military Affairs Adviser to the President.

---

[1] The misspelled name in the caption of Plaintiffs' complaint has been corrected for President H.H. Sheikh Mohamed bin Zayed Al Nahyan.

Dated:  October 19, 2023                    Respectfully submitted,


                                            */s Z.W. Julius Chen*
                                            Z.W. Julius Chen
                                              D.C. Bar No. 1002635
                                            Hal S. Shapiro
                                              D.C. Bar No. 440709
                                            AKIN GUMP STRAUSS HAUER & FELD LLP
                                            2001 K Street, N.W.
                                            Washington, D.C. 20006
                                            Telephone: (202) 887-4000
                                            chenj@akingump.com

                                            Stephen M. Baldini
                                            AKIN GUMP STRAUSS HAUER & FELD LLP
                                            One Bryant Park, 44th Floor
                                            New York, N.Y. 10036

                                            *Counsel to the UAE Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMIN ALLAWI ALI, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 1:23-cv-00576-RDM |
| MOHAMED BEN ZAYED AL-NAHYAN, *et al.*, | |
| *Defendants*. | |

**UAE DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL ALLEGATIONS ....................................................................................2

LEGAL STANDARDS ...........................................................................................3

ARGUMENT ........................................................................................................4

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION....................................................................5

    A.    The District Of Columbia Long-Arm Statute Does Not Provide Personal Jurisdiction...........................................................5

    B.    Exercising Personal Jurisdiction Over The UAE Defendants Would Be Inconsistent With Due Process ......................................7

II.    THE UAE DEFENDANTS ARE IMMUNE FROM SUIT .......................8

    A.    The Foreign Sovereign Immunities Act Requires Dismissal Because The UAE Is The Real Party-In-Interest ............................8

    B.    Common-Law Foreign Sovereign Immunity Bars This Suit..........9

        1.    *The President and Prime Minister are protected by status-based immunity.*.......................................................10

        2.    *The UAE Defendants are protected by conduct-based immunity.* ................................................................11

III.    PLAINTIFFS FAIL TO STATE ANY CLAIM ON WHICH RELIEF CAN BE GRANTED .................................................................14

    A.    Plaintiffs Fail To Plead Sufficient Facts Implicating The UAE Defendants In The Alleged Tortious Acts ...........................14

    B.    Supreme Court Precedent Forecloses Plaintiffs' Alien Tort Statute Claim (Count One)............................................................16

    C.    Plaintiffs Fail To Allege The Elements Of An Extrajudicial Killing Under The Torture Victim Protection Act (Count Two)..................................................................................................19

    D.    Plaintiffs' State-Law Claims (Counts Seven And Eight) Are Barred By The Statute Of Limitations ...........................................21

CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

### C<small>ASES</small>:

*Albra v. Board of Trs. of Miami Dade Coll.*,
  296 F. Supp. 3d 181 (D.D.C. 2018) ................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................4, 14, 16

*Beach TV Props., Inc. v. Solomon*,
  306 F. Supp. 3d 70 (D.D.C. 2018) ................................................................................21

*Belhas v. Ya'alon*,
  515 F.3d 1279 (D.C. Cir. 2008) ................................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................14

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*,
  137 S. Ct. 1773 (2017) ................................................................................7

*Busby v. Capital One, N.A.*,
  772 F. Supp. 2d 268 (D.D.C. 2011) ................................................................................21

*Byrne v. Clinton*,
  410 F. Supp. 3d 109 (D.D.C. 2019) ................................................................................21

*Cengiz v. Salman*,
  No. 20-cv-3009 (JDB), 2022 WL 17475400 (D.D.C. Dec. 6, 2022) ......................................10

*Doe 1 v. Buratai*,
  318 F. Supp. 3d 218 (D.D.C. 2018) ................................................................................7

*Doe I v. State of Israel*,
  400 F. Supp. 2d 86 (D.D.C. 2005) ................................................................................13

*Ford ex rel. Est. of Ford v. Garcia*,
  289 F.3d 1283 (11th Cir. 2002) ................................................................................15

*Ficken v. Rice*,
  594 F. Supp. 2d 71 (D.D.C. 2009) ................................................................................6

*Force v. Islamic Rep. of Iran*,
  610 F. Supp. 3d 216 (D.D.C. 2022) ................................................................................19, 20

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) ................................................................................7

*Forras v. Rauf*,
    812 F.3d 1102 (D.C. Cir. 2016) .........................................................7

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ......................................................5, 7

*Haralson v. Management & Training Corp.*,
    724 F. Supp. 2d 82 (D.D.C. 2010) ....................................................22

*Hellenic Lines, Ltd. v. Moore*,
    345 F.2d 978 (D.C. Cir. 1965) ...........................................................4

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) ............................................................15

*IMAPizza, LLC v. At Pizza Ltd.*,
    334 F. Supp. 3d 95 (D.D.C. 2018) ......................................................3

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018) .....................................................................18

*Kadic v. Karadzic*,
    70 F.3d 232 (2d Cir. 1995) ...............................................................18

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013) ...................................................16, 17, 18, 19

*Kiwanuka v. Bakilana*,
    844 F. Supp. 2d 107 (D.D.C. 2012) ...................................................21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ...........................................................................4

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ..........................................................3, 5

*Mamani v. Berzain*,
    654 F.3d 1148 (11th Cir. 2011) ...................................................16, 21

*Mamani v. Sánchez Bustamante*,
    968 F.3d 1216 (11th Cir. 2020) .........................................................21

*Nestlé USA, Inc. v. Doe*,
    141 S. Ct. 1931 (2021) ...........................................................16, 17, 18

*Opati v. Republic of Sudan*,
    140 S. Ct. 1601 (2020) ......................................................................19

iii

*Owens v. Republic of Sudan*,
  174 F. Supp. 3d 242 (D.D.C. 2016) ...................................................................20
  864 F.3d 751 (D.C. Cir. 2017) ...................................................................19, 20

*Parker v. Grand Hyatt Hotel*,
  124 F. Supp. 2d 79 (D.D.C. 2000) ...................................................................22

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  582 F.3d 244 (2d Cir. 2009) ...................................................................18

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ...................................................................7

*Rendall-Speranza v. Nassim*,
  107 F.3d 913 (D.C. Cir. 1997) ...................................................................22

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) ...................................................................10

*Republic of Phil. v. Pimentel*,
  553 U.S. 851 (2008) ...................................................................9

*Rishikof v. Mortada*,
  70 F. Supp. 3d 8 (D.D.C. 2014) ...................................................................13

*Robo-Team NA, Inc. v. Endeavor Robotics*,
  313 F. Supp. 3d 19 (D.D.C. 2018) ...................................................................6

*Rosenkrantz v. Inter-American Dev. Bank*,
  35 F.4th 854 (D.C. Cir. 2022) ...................................................................8

*Saleh v. Titan Corp.*,
  580 F.3d 1 (D.C. Cir. 2009) ...................................................................18, 19

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ...................................................................8, 9, 11

*Savage v. Bioport, Inc.*,
  460 F. Supp. 2d 55 (D.D.C. 2006) ...................................................................6

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ...................................................................17, 18

*The Schooner Exchange v. McFaddon*,
  11 U.S. (7 Cranch) 116 (1812) ...................................................................10

*United States v. Ferrara*,
  54 F.3d 825 (D.C. Cir. 1995) ...................................................................6

iv

*Yousuf v. Samantar*,
    699 F.3d 763 (4th Cir. 2012) ............................................................................10

**STATUTES:**

18 U.S.C.
    § 2441 ...................................................................................................................19

28 U.S.C.
    § 1604 .....................................................................................................................8

D.C. Code
    § 13-423 ..................................................................................................................5
    § 13-423(a) ..............................................................................................................5
    § 13-423(a)(1) ..........................................................................................................5
    § 13-423(b) ..............................................................................................................5

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 2(a)(2) ......................20

**OTHER AUTHORITIES:**

FED. R. CIV. P.
    12(b)(1) ...................................................................................................................4
    12(b)(2) ...................................................................................................................3
    12(b)(6) ........................................................................................................4, 14, 22
    19(a)(1)(B) ...............................................................................................................8

WORKING GROUP OF THE ABA, REPORT ON THE U.S. FOREIGN SOVEREIGN
    IMMUNITIES ACT (2001) .......................................................................................10

Restatement (Second) of Foreign Relations Law of the United States § 66(f)
    (1965) ........................................................................................................11, 12, 13

## INTRODUCTION

In this case, Plaintiffs bring a broad set of claims relating to the ongoing civil conflict in Yemen, seeking to implicate defense contractors, the U.S. government, and foreign leaders.  In particular, Plaintiffs contend that the President of the United Arab Emirates ("UAE"), the Prime Minister of the UAE, and the former Chief of Staff of the UAE Armed Forces (together, the "UAE Defendants") should be held liable under the Alien Tort Statute ("ATS"), the Torture Victim Protection Act ("TVPA"), and state law for injuries suffered as a result of two airstrikes conducted by a coalition of foreign countries.  Plaintiffs' allegations that the UAE Defendants authorized military actions that deliberately target civilians are false, and the UAE Defendants deny them in the strongest possible terms.  The question before this Court, however, is whether the allegations in Plaintiffs' complaint are sufficient to survive a threshold motion to dismiss.  For numerous reasons, they are not.

*First*, this Court lacks personal jurisdiction over the UAE Defendants, who reside in and are leaders of a foreign sovereign nation—a "significant security partner[] for the United States" providing "vital and longstanding collaboration in defeating terrorist groups *** [and] securing regional stability."  U.S. Mot. 7.  The UAE Defendants do not have any relevant contacts with the District of Columbia.  Indeed, Plaintiffs' claims involve events that occurred 7,000 miles away with no relevant connection to the District (or, for that matter, the United States).  It is not enough for Plaintiffs to suggest vaguely that the UAE government has dealings with the U.S. government or with defense contractors that (in unspecified contexts) have business dealings in the District.

*Second*, the UAE Defendants are not the proper subjects of Plaintiffs' claims.  In naming the President, Prime Minister, and former Chief of Staff as defendants, Plaintiffs attempt to end-run the Foreign Sovereign Immunities Act's ("FSIA") limitations on suing foreign governments.  But the Supreme Court has made clear that a plaintiff may not avoid the FSIA through such artful

1

pleading where, as here, a state is the real target of the plaintiff's complaint.  Critically, the UAE Defendants are also independently immune from suit under the common law status-based or conduct-based immunity doctrines, which protect the dignity of those foreign leaders' offices.

*Finally*, assuming this Court addresses the substance of the allegations against the UAE Defendants, all of Plaintiffs' claims fail on their own terms because Plaintiffs have not pled sufficient facts to demonstrate that the UAE Defendants—none of whom are alleged to have personally committed the purported tortious acts—can be held legally responsible under U.S. law for those acts.  The claims also suffer from the following specific defects:

- the ATS claim (Count One) fails because it concerns only overseas conduct, and a novel war crimes ATS cause of action should not be recognized under Supreme Court precedent;

- the TVPA claim (Count Two), based on extrajudicial killing, fails because the complaint does not allege a "killing" of a Plaintiff, as required by the statute's plain terms;

- the negligent supervision (Count Seven) and intentional infliction of emotional distress (Count Eight) claims are barred by the statute of limitations.

For any of those reasons, Plaintiffs' complaint cannot be maintained against the UAE Defendants and should be dismissed.

## FACTUAL ALLEGATIONS

Plaintiffs, all foreign national Yemeni citizens or residents, bring suit pertaining to two airstrikes that took place over six years ago in Yemen as a result of military activity by a coalition of foreign countries (the "Coalition").   Specifically, Plaintiffs allege that the Coalition—comprising Saudi Arabia, UAE, Bahrain, Egypt, Jordan, Kuwait, Morocco, Senegal, Sudan, and, until June 2017, Qatar—has intervened in a conflict in Yemen at the request of the Yemeni President, and that two airstrikes by Coalition forces—one in 2015 and one in 2016—caused Plaintiffs "significant bodily harm and property loss."  ECF No. 1 ("Compl."), ¶¶ 1-2, 5, 8, 36.

In March 2023, Plaintiffs filed suit against several U.S. defense contractors and their Chief Executive Officers, U.S. government officials, and Saudi officials, as well as the current President of the UAE (H.H. Sheikh Mohamed bin Zayed Al-Nahyan), the current Prime Minister of the UAE (H.H. Sheikh Mohammed bin Rashid Al Maktoum), and the current Military Affairs Adviser to the President of the UAE (former Chief of Staff of the UAE Armed Forces Lieutenant General H.E. Mohamed Thani Al Rumaithi). Compl. ¶¶ 2, 189. The complaint alleges that, due to their purported involvement in the two airstrikes, the UAE Defendants should be held liable for war crimes and extrajudicial killing under the ATS (Count One), extrajudicial killing in violation of the TVPA (Count Two), negligent supervision (Count Seven), and intentional infliction of emotional distress (Count Eight).

Plaintiffs' complaint does not contain any non-conclusory allegation that any of the UAE Defendants specifically commanded or otherwise exercised control over the two airstrikes. Instead, Plaintiffs aver that the UAE, as a general matter, helped form the Coalition, that "[t]he Coalition's forces [we]re primarily" but not wholly "under the command of the UAE and the Kingdom of Saudi Arabia," and that beginning in 2015 (the year of the first airstrike) "Saudi Arabia effectively assumed the leadership of the Coalition." Compl. ¶¶ 27, 29, 33.

## LEGAL STANDARDS

Under Rule 12(b)(2), a plaintiff must make a *prima facie* showing that the court has personal jurisdiction over each defendant. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017). "Conclusory statements" or "bare allegation[s]" do not satisfy that burden, and a court need not accept any inferences drawn by a plaintiff if such inferences are not warranted by the facts. *Id.* Where the facts alleged do not make out a jurisdictional showing, the complaint must be dismissed. *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 107-108 (D.D.C. 2018).

Under Rule 12(b)(1), a plaintiff bears the burden of establishing subject matter jurisdiction. *Albra v. Board of Trs. of Miami Dade Coll.*, 296 F. Supp. 3d 181, 185 (D.D.C. 2018); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In deciding a motion to dismiss for lack of jurisdiction, a court accepts as true the uncontroverted material factual allegations of the complaint, but it "need not accept inferences drawn by the plaintiff *** if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions." *Albra*, 296 F. Supp. 3d at 185.

Under Rule 12(b)(6), the complaint must plead facts that, if accepted as true, would state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The claim must be "plausible on its face"—a standard that "asks for more than a sheer possibility that a defendant has acted unlawfully" and is "especially important" in suits involving "Government-official defendants" entitled to assert immunity.  *Id*. at 678, 685.

## ARGUMENT

Plaintiffs' complaint must be dismissed on any of three independent grounds:  (i) the Court lacks personal jurisdiction over the UAE Defendants; (ii) the UAE Defendants are immune from suit; and (iii) Plaintiffs fail to state a claim against the UAE Defendants on which relief can be granted.[2]

---

[2] Plaintiffs purportedly served the UAE Defendants through the UAE Embassy in Washington, D.C.  The UAE Defendants take exception to service in this manner.  *See Hellenic Lines, Ltd. v. Moore*, 345 F.2d 978, 980-981 & n.5 (D.C. Cir. 1965) (prohibiting service on ambassador in attempt to join foreign state that "might well protest *** that the United States had failed to protect the person and dignity of its official representative").  But because the complaint is so plainly deficient both in terms of jurisdiction and on the merits, the Court need not decide that sensitive issue.

## I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Plaintiffs' complaint fails to allege any facts sufficient to establish this Court's personal jurisdiction over the UAE Defendants, none of whom are resident in the United States. *See Livnat*, 851 F.3d at 57.  "To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry:  A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  Here, neither the D.C. long-arm statute nor constitutional due process requirements allow the assertion of personal jurisdiction over the UAE Defendants.

### A.   The District Of Columbia Long-Arm Statute Does Not Provide Personal Jurisdiction

The sole provision of the D.C. long-arm statute that Plaintiffs cite in their complaint—D.C. Code § 13-423—does not provide for personal jurisdiction over the UAE Defendants.  *See* Compl. ¶ 9.  Under that provision, a D.C. court may exercise personal jurisdiction relating "to a claim for relief arising from" certain enumerated acts committed within the District.  D.C. CODE § 13-423(a); *see also id.* § 13-423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.").  But Plaintiffs allege no such acts.  At most, appearing to proceed under the "transacting any business in the District of Columbia" prong of the statute, *id.* § 13-423(a)(1), Plaintiffs offer a *single* sentence:

> The named leaders of *** the UAE military forces have been conducting substantial and continuous business within the District of Columbia; every arms deal they make requires close ties to the U.S. government and the defense contractors with established businesses in D.C., as well as the direct approvals made by the executive agencies in the U.S.

Compl. ¶ 9.

5

Notably absent from that sentence are any non-conclusory allegations that any business was actually transacted in the District.  On the contrary, the complaint speaks only in terms of alleged "close ties" to "defense contractors with established businesses in D.C."  Compl. ¶ 9.  Even if the UAE Defendants were to have such ties to defense contractors that do business in the District, that would not demonstrate that the UAE Defendants themselves transact business in the District— either generally or specifically with respect to the arms deals referenced in the complaint.  None of the accused defense contractors are even headquartered in the District.  *See id.* ¶ 46 (alleging Raytheon is headquartered in Waltham, Massachusetts); *id.* ¶ 49 (alleging Lockheed Martin is headquartered in North Bethesda, Maryland); *id.* ¶ 52 (alleging General Dynamics is headquartered in Reston, Virginia).

Nor does Plaintiffs' allegation that arms deals required "close ties to the U.S. government" or "direct approvals made by the executive agencies in the U.S." establish jurisdiction.  Compl. ¶ 9.  Although Plaintiffs are not explicit, presumably their point is that the federal government is located in the District.  It is settled law, however, that reliance on such contacts is precluded by "the government contacts rule, which states that 'contact with a federal instrumentality located in the District will not give rise to personal jurisdiction.'"  *Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 24-25 (D.D.C. 2018) (footnote omitted) (quoting *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995)); *see also Ficken v. Rice*, 594 F. Supp. 2d 71, 75 (D.D.C. 2009) (holding that, under government contacts exception, defendant's contacts with State Department could not establish personal jurisdiction in District); *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 62 (D.D.C. 2006) (same with respect to defendant's contacts with Department of Defense).

In sum, D.C. law does not provide a basis for personal jurisdiction over the non-resident UAE Defendants.  The complaint should be dismissed on that straightforward ground alone.  *See*

6

*Forras v. Rauf*, 812 F.3d 1102, 1105 (D.C. Cir. 2016) ("What is clear is that we can 'turn[] directly to personal jurisdiction' to resolve this case[.]") (first alteration in original).

### B. Exercising Personal Jurisdiction Over The UAE Defendants Would Be Inconsistent With Due Process

Even if this Court's exercise of personal jurisdiction would comply with the D.C. long-arm statute, such jurisdiction must still comport with due process. *GTE New Media*, 199 F.3d at 1347. This Court can constitutionally exercise jurisdiction over a non-resident defendant only if there is "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (alteration in original). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781.

As just explained, Plaintiffs do not allege that the UAE Defendants transacted any business in the District of Columbia—let alone in a manner that links specific arms deals to the 2015 and 2016 airstrikes alleged in the complaint. *See* Compl. ¶ 9. Hence, nothing in the complaint suggests that the UAE Defendants "purposefully avail[ed]" themselves of the privilege of doing business in the District in a way that is connected to the underlying controversy. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (alteration in original).

More broadly, the underlying controversy concerns alleged tortious acts committed in a foreign country against foreign citizens, without any suggestion that the acts were calculated to cause injury inside the District. That is "insufficient to satisfy the usual 'minimum contacts' requirement" under the Due Process Clause. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002); *see Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 228-229 (D.D.C. 2018) (reasoning that if tort committed abroad against American citizen is insufficient to establish

personal jurisdiction without some further connection to United States, then tort "committed abroad against *foreign* citizens can hardly establish personal jurisdiction without some further connection").

## II.   THE UAE DEFENDANTS ARE IMMUNE FROM SUIT

Plaintiffs' complaint must also be dismissed for lack of subject matter jurisdiction because the UAE Defendants are immune from suit.  *See Rosenkrantz v. Inter-American Dev. Bank*, 35 F.4th 854, 860-861 (D.C. Cir. 2022).

### A.   The Foreign Sovereign Immunities Act Requires Dismissal Because The UAE Is The Real Party-In-Interest

As a threshold matter, the allegations of the complaint make clear that Plaintiffs' suit against the UAE Defendants is in reality one against the UAE.  That means the FSIA's jurisdiction-stripping immunity bar applies and compels dismissal of the UAE Defendants.  *See* 28 U.S.C. § 1604 ("Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.").

To be sure, Plaintiffs brought their suit against individual UAE Defendants.  But the Supreme Court's decision in *Samantar v. Yousuf* warns that a plaintiff's "artful pleading" cannot sidestep the FSIA simply by naming "individual official[s]" as defendants.  560 U.S. 305, 324 (2010).  "[S]ome actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest."  *Id.* at 325.  "Even when a plaintiff [serves] only a foreign official, it may be the case that the foreign state itself *** is a required party"—*i.e.*, "because that party has 'an interest relating to the subject of the action' and 'disposing of the action in the person's absence may *** as a practical matter impair or impede the person's ability to protect the interest.'"  *Id.* at 324 (second ellipsis in original) (quoting FED.

R. Civ. P. 19(a)(1)(B)).  Accordingly, when the foreign state would be immune from suit under the FSIA, "the district court may have to dismiss the suit" against the individuals.  *Id.* at 325 (citing *Republic of Phil. v. Pimentel*, 553 U.S. 851, 867 (2008)).

Those principles apply with full force here.  The complaint's allegations concerning the UAE Defendants are tantamount to alleging actions taken or sponsored by the UAE government.  Plaintiffs' theory of the case is that "Coalition forces launched an indiscriminate bombing campaign on the Yemeni people," causing their injuries.  Compl. ¶¶ 13, 28, 177, 184, 192, 244; *see also id.* ¶ 168 ("[T]he Coalition committed the atrocities suffered by the Plaintiffs.").  But Plaintiffs allege that "*the UAE*" joined the Coalition, along with other countries.  *Id.* ¶ 27 (emphasis added).  Likewise, "[t]he Coalition's forces" are said to be "primarily under the command of *the UAE* and the Kingdom of Saudi Arabia."  *Id.* ¶ 29 (emphasis added).  Although Plaintiffs also claim that the UAE acted through individual UAE Defendants, *see, e.g.*, *id.* ¶ 62 (alleging that "the UAE" engaged in unlawful conduct "through the named Defendant officials"), that unexceptional assertion only reinforces the "potential for injury to the interests of the absent sovereign" and thus the propriety of dismissal, *Samantar*, 560 U.S. at 325.

### B.    Common-Law Foreign Sovereign Immunity Bars This Suit

"Even if a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under the common law."  *Samantar*, 560 U.S. at 324.  In applying common-law immunity principles, the United States has recognized that "suits against foreign officials— whether they are heads of state or lower-level officials—implicate many of the same considerations of comity and respect for other Nations' sovereignty as suits against foreign states." Suggestion of Immunity at 7, *Dogan v. Barak*, No. 2:15-cv-08130 (C.D. Cal. June 10, 2016), ECF No. 48.  Here, two independent forms of common-law immunity preclude this case from

proceeding against the UAE Defendants: (i) status-based immunity and (ii) conduct-based immunity.

         1.      *The President and Prime Minister are protected by status-based immunity.*

At a minimum, two of the three UAE Defendants—the President and Prime Minister—are clearly immune from suit under the common-law principle of status-based immunity.  Courts have long recognized that "status-based immunities" shield certain high-level foreign officials from legal proceedings in the United States.  *Yousuf v. Samantar*, 699 F.3d 763, 772 (4th Cir. 2012).  In *The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116 (1812), the Supreme Court held "that as a matter of comity, members of the international community had implicitly agreed to waive the exercise of jurisdiction over other sovereigns in certain classes of cases, such as those involving foreign ministers or the person of the sovereign."  *Republic of Austria v. Altmann*, 541 U.S. 677, 688 (2004).  Although sometimes "misleading[ly]" referred to as "head of state immunity," status-based immunity "has been applied to *** prime ministers and other members of the 'government.'"  WORKING GROUP OF THE ABA, REPORT ON THE U.S. FOREIGN SOVEREIGN IMMUNITIES ACT 56 (2001);[3] *see Cengiz v. Salman*, No. 20-cv-3009 (JDB), 2022 WL 17475400, at *4 (D.D.C. Dec. 6, 2022) ("Under customary international law, foreign heads of state, heads of government, and foreign ministers are traditionally entitled to status-based immunity from civil suit[.]"); Suggestion of Immunity at 6, *You v. Japan*, No. 3:15-cv-03257 (N.D. Cal. Feb. 11, 2016), ECF No. 167 ("Although the doctrine is referred to as 'head of state immunity,' it applies to heads of government and foreign ministers as well."); Suggestion of Immunity, *Sikhs for Justice v. Singh*, No. 1:13-cv-01460 (D.D.C. May 2, 2014), ECF No. 7 (same).  Consistent with that understanding, U.S. courts have repeatedly recognized the immunity of the heads of government and other high-

---

[3] https://tinyurl.com/3cuh6z8z.

ranking officials, such as prime ministers and foreign ministers.  *See, e.g.*, Order, *"American Justice Ctr." (AJC), Inc. v. Modi*, No. 1:14-cv-7780 (S.D.N.Y Jan. 14, 2015), ECF No. 11 (Prime Minister of India); *Force v. Sein*, No. 1:15-cv-7772, 2016 WL 1261139, at *1 (S.D.N.Y. Mar. 30, 2016), ECF No. 29 (Foreign Minister of Burma).

As Plaintiffs concede, H.H. Sheikh Mohamed bin Zayed Al Nahyan is the current President of the UAE and was the UAE's "de facto ruler" at the time of the relevant events.  Compl. ¶¶ 2, 189.  H.H. Sheikh Mohammed bin Rashid Al Maktoum was and remains the Prime Minister of the UAE (as well as Minister of Defense and Vice President).  *Id.* ¶ 26.  Whatever the outer limits of status-based immunity, the UAE President and UAE Prime Minister lie at its core and must be dismissed.

## 2. The UAE Defendants are protected by conduct-based immunity.

In addition to status-based immunity, all three UAE Defendants are immune from suit by virtue of conduct-based immunity.  Under Restatement (Second) of Foreign Relations Law of the United States § 66(f) (1965)—a framework courts have used to analyze conduct-based immunity under the common law—there are three requisites to dismissal:  (i) the defendant is a "public minister, official, or agent of the [foreign] state"; (ii) the alleged "acts [were] performed in his official capacity"; and (iii) "the effect of exercising jurisdiction would be to enforce a rule of law against the state."  RESTATEMENT § 66(f).

The United States has argued, however, that "[r]eliance on the Second Restatement's provisions on foreign-official immunity as a conclusive statement of current law" would be "misplaced," and the Supreme Court has never adopted Restatement § 66(f).  Amicus Br. of the U.S. in Support of Pet. for Cert., *Mutond v. Lewis*, 141 S. Ct. 156 (2020), 2020 WL 2866592, at *14; *see Samantar*, 560 U.S. at 321 n.15 ("We express no view on whether Restatement § 66 correctly sets out the scope of the common-law immunity[.]").  The United States has instead taken

the position that courts should consider whether the foreign official would be immune from suit under principles accepted by the Executive Branch, by which acts of defendant foreign officials who are sued for exercising the powers of their office are treated as "acts taken in an official capacity."  Suggestion of Immunity at 9, *Dogan*, No. 2:15-cv-08130; *see also* Suggestion of Immunity at 5, *Doe v. Zedillo Ponce de Leon*, No. 3:11-cv-01433 (D. Conn. Sept. 7, 2012), ECF No. 38 ("In determining whether certain acts were taken in an official capacity, the Department of State generally presumes that allegations relating to the official's exercise of the powers of his or her office fall into that category."); Suggestion of Immunity at 10, *Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-05381 (E.D.N.Y. Dec. 17, 2012), ECF No. 35 (explaining that defendants are immune because "plaintiffs' claims challenge defendants['] *** exercise of their official powers as officials of the Government of Pakistan").  The United States' position entails an analysis more supportive of immunity that "generally turns on whether the challenged *action* was taken in an official capacity" (*i.e.*, the second Restatement § 66(f) factor).  Amicus Br. of the U.S., *Mutond*, 2020 WL 2866592, at *10.

The UAE Defendants satisfy both conduct-based immunity tests.  Regarding the second prong of the Restatement test, which the Executive Branch essentially treats as dispositive, the complaint expressly alleges that UAE Defendants carried out the purported acts in their "official capacit[ies]."  RESTATEMENT § 66(f); *see* Compl. ¶ 26 (claiming alleged acts were committed by "Defendant Mohamed [bin] Zayed Al-Nahyan *in his capacity as Supreme Commander of the Armed Forces of the UAE*," "Defendant Mohammed bin Rashid Al Maktoum *in his capacity as the vice president, prime minister, and minister of defense of the UAE*," and "Defendant Hamad Mohamed Thani Al Rumaithi *in his capacity as Chief of Staff of the UAE Armed Forces*") (emphases added).  In numerous places, the complaint further alleges that the UAE Defendants

12

carried out the purported acts as part of an official government policy; it nowhere suggests that they acted beyond the scope of their authority or that their actions were not taken on behalf of the state. *See Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014); Compl. ¶ 27 (alleging that "the UAE and *** its de facto ruler and Supreme Commander of the Armed Forces, Defendant Mohamed bin Zayed Al-Nahyan, formed the Coalition"); *id.* ¶ 62 (alleging that "the UAE through the named Defendant officials *** pursue[d] an indiscriminate and brutal bombing campaign"); *id.* ¶ 180 (alleging that UAE Defendants, "when acting as military leaders of *** the UAE" violated international law); *id.* ¶ 195 (similar); *cf. Doe I v. State of Israel*, 400 F. Supp. 2d 86, 104 (D.D.C. 2005) ("In contrast, suits against officers in their personal capacities must pertain to private action—that is, to actions that exceed the scope of authority vested in that official so that the official cannot be said to have acted on behalf of the state.").

The UAE Defendants satisfy the Restatement's two other factors as well.  There can be no question that the UAE Defendants are "public minister[s], official[s], or agent[s] of the [foreign] state."  RESTATEMENT § 66(f).  The complaint acknowledges that the UAE Defendants are senior public officials, including at the highest level of the UAE government.  Compl. ¶ 26.  In addition, "the effect of exercising jurisdiction [over the UAE Defendants] would be to enforce a rule of law against the [UAE]."  RESTATEMENT § 66(f).  A finding of liability as to the leaders of the UAE for actions taken on behalf of the UAE as the UAE's leaders would necessarily implicate the liability of the UAE itself.  *E.g.*, Compl. ¶ 62 (alleging that "the *UAE* through the named Defendant officials *** pursue[d] an indiscriminate and brutal bombing campaign") (emphasis added). Accordingly, dismissal is warranted for each of the UAE Defendants under conduct-based immunity principles as well.

## III.  PLAINTIFFS FAIL TO STATE ANY CLAIM ON WHICH RELIEF CAN BE GRANTED

The foregoing jurisdictional defects are fatal to Plaintiffs' complaint, but it would still fail on the merits.  To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint must "permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  Neither "labels and conclusions" nor "naked assertion[s]" suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  That admonition is "especially important" where, as here, claims are brought against "Government-official defendants."  *Iqbal*, 556 U.S. at 685.  Plaintiffs' claims against the UAE Defendants should be dismissed because they do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (internal quotation marks omitted).

### A.  Plaintiffs Fail To Plead Sufficient Facts Implicating The UAE Defendants In The Alleged Tortious Acts

With respect to all claims, the complaint does not allege that the UAE Defendants personally committed the alleged torts.  Rather, the complaint asserts that Plaintiffs "suffered significant bodily harm and property loss due to attacks *by the Coalition*."  Compl. ¶ 5 (emphasis added); *see also id.* ¶ 168 ("[T]he *Coalition* committed the atrocities suffered by the Plaintiffs.") (emphasis added).  And while Plaintiffs do not identify who actually served aboard the "Coalition military aircraft" during the 2015 and 2016 air strikes, *id.* ¶¶ 13, 22, Plaintiffs have never suggested that the UAE Defendants were directly involved.  At best, Plaintiffs describe—in a conclusory manner and without any supporting factual allegations—the UAE Defendants as giving "command[s] and authorization" for the alleged airstrikes.  *Id.* ¶ 43; *see also id.* ¶¶ 37-42.  As such, to proceed against the UAE Defendants, Plaintiffs must plead facts sufficient to make out a claim under the doctrine of command responsibility, which provides that, in certain circumstances, "a

superior" may be held "responsible for the actions of subordinates *** in connection with acts committed in wartime." *Hilao v. Estate of Marcos*, 103 F.3d 767, 777 (9th Cir. 1996).

There are three elements of a command-responsibility claim:  "(1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) that the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes." *Ford ex rel. Est. of Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002); *see also Hilao*, 103 F.3d at 777.  Plaintiffs' allegations fail to satisfy any of the three elements.

Plaintiffs cannot satisfy the doctrine's first element because they fail to allege plausibly that the UAE Defendants had "effective control"—that is, a "material ability to prevent or punish" the offending conduct—over the Coalition pilots that performed the airstrikes. *Ford*, 289 F.3d at 1290.  Although Plaintiffs vaguely claim that the Coalition forces were "primarily under the command of" both "the UAE and the Kingdom of Saudi Arabia," Compl. ¶ 29, they more specifically allege that beginning in 2015, the year of the first airstrike, "Saudi Arabia effectively assumed the leadership of the Coalition." *Id.* ¶ 33.  Even were that not the case, Plaintiffs do not allege that the UAE exercised control over the decision-making or actions of the specific Coalition pilots who committed the specific airstrikes at issue in this case, much less that the individual UAE Defendants *themselves* exercised such control.  The UAE Defendants' leadership positions cannot presumptively establish such control because the command-responsibility doctrine rejects "strict

—

liability akin to respondeat superior for national leaders at the top of the long chain of command in a case like this one." *Mamani v. Berzain*, 654 F.3d 1148, 1154 (11th Cir. 2011).

As to the second element of command responsibility, Plaintiffs offer only a barebones statement that the UAE Defendants "acted with specific knowledge" that Plaintiffs would be harmed by the airstrikes, Compl. ¶ 43, precisely the type of allegation that courts hold insufficient to survive a motion to dismiss, *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). And even accepting *arguendo* that the UAE Defendants had the ability to "punish" the offending conduct, Plaintiffs nowhere allege that the UAE Defendants in fact failed to do so, as the doctrine's third element requires.

### B.   Supreme Court Precedent Forecloses Plaintiffs' Alien Tort Statute Claim (Count One)

Plaintiffs' ATS claim fails most obviously because the ATS does not apply to conduct occurring exclusively within a foreign sovereign's territory. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013) ("[T]he presumption against extraterritoriality applies to claims under the ATS, and *** nothing in the statute rebuts that presumption."). Here, the alleged attacks by a coalition of foreign states took place on Yemeni soil against foreign national Yemeni citizens and residents. Thus, all of the relevant conduct relating to the alleged torts occurred outside the United States. *See Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021).

To the extent that the complaint alleges any domestic conduct, it is limited to statements that the UAE Defendants "maintain[] close contractual relationships with U.S. defense contractors and the U.S. government," and that the alleged airstrikes occurred "with[] the aid of U.S.-weapons." Compl. ¶¶ 167-168. But as the Supreme Court's recent decision in *Nestlé* underscores, such activities (even if assumed to be true) do not create a connection with the United States

sufficient to overcome the ATS's extraterritorial bar.  In *Nestlé*, the Supreme Court held that the plaintiffs had failed to establish a domestic application of the ATS even where they alleged that a defendant undertook "major operational decision[making]" in the United States that led to the provision of "technical and financial resources—such as training, fertilizer, tools, and cash" to Ivory Coast farms that exploited enslaved children.  141 S. Ct. at 1935, 1937.  If "major operational decision[making]" that results in the provision of tools that advance offending conduct cannot overcome an extraterritorial bar, then mere "contractual relationships" that similarly result in the provision of tools (here, U.S.-made weapons) that allegedly advance offending conduct cannot either.

Extraterritoriality aside, Plaintiffs' ATS claim rests on a novel extension of the statute to war crimes, which the D.C. Circuit has yet to recognize.  For good reason:  The Supreme Court has "repeatedly stressed the need for judicial caution in considering which claims [can] be brought under the ATS."  *Kiobel*, 569 U.S. at 116.  Hence, under the test outlined in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), a court will recognize a new ATS cause of action only if a plaintiff first establishes that a prohibition is not just "universal" and "obligatory" under international law but also is "'defined with a specificity comparable to' the three international torts known in 1789."  *Nestlé*, 141 S. Ct. at 1938 (plurality op.) (quoting *Sosa*, 542 U.S. at 725, 732).  War crimes violations are not "defined with a specificity comparable to" those international torts—*i.e.*, violations of safe conduct, interference with ambassadors, and piracy.  *Sosa*, 542 U.S. at 725.  To the contrary, in Plaintiffs' own telling, war crimes violations encompass an extraordinarily wide range of behaviors involving civilians in armed conflict, including "torture, cruel or inhuman

treatment, performing biological experiments, murder, mutilation, or maiming, intentionally causing serious bodily injury, rape, sexual assault or abuse, and taking hostages."  Compl. ¶ 170.[4]

In addition, Plaintiffs must show "that courts should exercise 'judicial discretion' to create a cause of action" addressing the violation of that norm "rather than defer to Congress."  *Nestlé*, 141 S. Ct. at 1938 (plurality op.) (quoting *Sosa*, 542 U.S. at 726, 736 & n.27).  Foreign policy concerns are critical to that second inquiry, given the serious "adverse foreign policy consequences" that would result from recognizing such a broad range of violations under the ATS.  *Sosa*, 542 U.S. at 728; *see also Nestlé*, 141 S. Ct. at 1948 (Sotomayor, J. concurring) (agreeing with plurality that "the diplomatic costs of allowing an ATS suit to proceed may outweigh the benefits of providing redress to an injured foreign citizen"); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1407 (2018) ("[J]udicial caution under *Sosa* guards against our courts triggering serious foreign policy consequences, and instead defers such decisions, quite appropriately, to the political branches.") (internal quotation marks and ellipses omitted); *Saleh v. Titan Corp.*, 580 F.3d 1, 16 (D.C. Cir. 2009) (noting "the Supreme Court's recognition of Congress' superior legitimacy in creating causes of action").

Here, the "diplomatic strife" such a suit could cause is readily apparent.  *Kiobel*, 569 U.S. at 124.  For one thing, the United States has emphasized not only that the UAE is a "strategic partner[]" with whom it is "working collectively toward the common goal of a stable, secure, and prosperous Middle East," but also that this suit implicates "complex foreign policy and national security judgments" that are "fraught with political and foreign affairs considerations," thereby

---

[4] Plaintiffs cite two Second Circuit cases that have recognized a war crimes cause of action under the ATS.  The first was decided before *Sosa*, *see Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), and the second simply relied on that precedent and Justice Breyer's concurrence in *Sosa* (in which no other justice joined) to maintain that war crimes were cognizable under the ATS, *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 256 (2d Cir. 2009).

risking harm "to the United States' foreign relations."  U.S. Mot. 1-2, 7, 22, 31.  For another, recognizing an ATS cause of action for alleged war crimes would imply "that other nations *** could hale our citizens [and leaders] into their courts" for alleged war crimes violations, *Kiobel,* 569 U.S. at 124—an outcome the political branches would almost certainly disfavor.  For yet another, "it is not as though Congress has been silent on the question of *** war crimes," having enacted the War Crimes Act, 18 U.S.C. § 2441.  *Saleh*, 580 F.3d at 16.  Tellingly, in doing so, Congress did not create a cause of action for the circumstances alleged here, which is why Plaintiffs invoke the ATS instead.

Accordingly, there are myriad reasons—the most straightforward being extraterritoriality under *Nestlé*—why this Court should not countenance Plaintiffs' ATS theory as a matter of law.[5]

### C.    Plaintiffs Fail To Allege The Elements Of An Extrajudicial Killing Under The Torture Victim Protection Act (Count Two)

To establish a violation of the TVPA on the basis of an extrajudicial killing, Plaintiffs must plausibly allege that the UAE Defendants' actions resulted in:  "(1) a killing; (2) that is deliberated; and (3) is not authorized by a previous judgment pronounced by a regularly constituted court." *Owens v. Republic of Sudan ("Owens II")*, 864 F.3d 751, 770 (D.C. Cir. 2017), *vacated on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).  Plaintiffs fail at the first two steps.

"The ordinary understanding of the word 'killing,' of course, means that someone has died—it does not mean that the person came close to death, was placed in imminent apprehension of death, or even sustained life-threatening injuries." *Force v. Islamic Rep. of Iran*, 610 F. Supp.

---

[5] Plaintiffs also appear to allege an ATS claim tied to extrajudicial killing, but not independently of their TVPA claim (discussed in the next section).  Compl. ¶¶ 182-186. Consequently, whether analyzed under the ATS or the TVPA, the claim is identical.

3d 216, 222 (D.D.C. 2022).  For that reason, the TVPA limits recovery for extrajudicial killings "to the victim's 'legal representative' or 'any [other] person who may be a claimant in an action for wrongful death,'" because "the direct victim in an extrajudicial killing will not survive." *Id.* at 223 (alteration in original) (quoting Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 2(a)(2)).  Here, Plaintiffs do not purport to represent any individual who in fact died as a result of the 2015 and 2016 airstrikes; they allege only "significant bodily harm and property loss due to attacks" to *themselves*.  Compl. ¶ 5; *see also id.* ¶¶ 16-20, 23-24, 37-42, 66 (alleging that "[a]ll Plaintiffs in this Complaint have suffered several bodily, mental, and proprietary injuries" but nothing more).

In addition, Plaintiffs do not adequately allege that the attacks that caused their injuries were "deliberated." *Owens II*, 864 F.3d at 770.  Although a "deliberated" killing need not involve "precision-targeting," *Owens v. Republic of Sudan ("Owens I")*, 174 F. Supp. 3d 242, 263 (D.D.C. 2016), it must "at a minimum *** be a *considered, purposeful* act that takes another's life," *Mamani v. Sánchez Bustamante*, 968 F.3d 1216, 1233 (11th Cir. 2020) (emphasis added); *see also Owens I*, 174 F. Supp. 3d at 263 (holding that "deliberated" killing is "one undertaken with careful consideration").

Rather than plead specific facts showing that the two relevant airstrikes were "purposeful" attacks to take civilian lives, Plaintiffs mainly lob conclusory allegations, claiming that the 2016 airstrike was a "targeted" attack, Compl. ¶ 22, and that the 2015 airstrike was "an indiscriminate attack on the civilian population," *id.* ¶ 21.  The best factual support Plaintiffs muster is an allegation that the United Nations Group of Experts has determined *generally* that the Coalition's campaign in Yemen "very likely" does "not meet the guiding principles of *distinction and proportionality*." *Id.* ¶ 67 (emphases added).  Such an allegation does not, however, speak to what

20

happened in the specific attacks at issue here.  *See Sanchez Bustamante*, 968 F.3d at 1240 (concluding that "evidence about widespread casualties and a pattern of innocent deaths does not [alone] suffice to demonstrate that in any particular instance a death was an extrajudicial killing"); *Belhas v. Ya'alon*, 515 F.3d 1279, 1293 (D.C. Cir. 2008) (Williams, J., concurring) (questioning whether "high-level decisions on military tactics and strategy during a modern military operation" can constitute "extrajudicial killing" under TVPA.  And it does not allege that the attacks were deliberated, as the TVPA requires, as opposed to "accidental or negligent."  *Berzain*, 654 F.3d at 1155 (concluding that "accidental or negligent" actions are insufficient to raise a claim for extrajudicial killing under TVPA).

### D.     Plaintiffs' State-Law Claims (Counts Seven And Eight) Are Barred By The Statute Of Limitations

Plaintiffs' negligent supervision (Count Seven) and intentional infliction of emotional distress ("IIED") (Count Eight) claims are time-barred.[6]  When adjudicating such state-law claims, federal courts apply the forum state's choice-of-law rules.  *Byrne v. Clinton*, 410 F. Supp. 3d 109, 121-122 (D.D.C. 2019).  District of Columbia law treats the statute of limitations as procedural, and therefore applies the D.C. statute of limitations to a tort claim regardless of where the alleged injury occurred.  *Beach TV Props., Inc. v. Solomon*, 306 F. Supp. 3d 70, 82-83 (D.D.C. 2018); *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 119 (D.D.C. 2012).  Thus, this Court should apply the D.C. statute of limitations to plaintiffs' negligent supervision and IIED claims.

---

[6] Notably, negligent supervision claims are typically found in the employer-employee context.  To the extent such claims are even appropriate in the present context, they fail for essentially the same reasons that Plaintiffs cannot satisfy the command-responsibility doctrine. *See* pp. 14-16, *supra*; *see also Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 284 (D.D.C. 2011) (explaining that plaintiff must show "that (1) [an] employee behaved in a dangerous or otherwise incompetent manner, (2) [its] employer knew or should have known its employee's dangerous or incompetent behavior and (3) [its] employer, 'armed with that actual or constructive knowledge, failed to adequately supervise[] the employee'").

The statute of limitations for both negligent supervision and IIED under D.C. law is three years. *Haralson v. Management & Training Corp.*, 724 F. Supp. 2d 82, 85 (D.D.C. 2010) (negligent supervision); *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 86-87 (D.D.C. 2000) (same); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997) (IIED). The complaint states that the alleged torts took place in 2015 and 2016, Compl. ¶¶ 11, 12, but Plaintiffs did not file their complaint for over six years, in 2023. Thus, Plaintiffs' negligent supervision and IIED claims are plainly time-barred, and Counts Seven and Eight should be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed as to the UAE Defendants President H.H. Sheikh Mohamed bin Zayed Al Nahyan, Prime Minister H.H. Sheikh Mohammed bin Rashid Al Maktoum, and Lieutenant General H.E. Hamad Mohamed Thani Al Rumaithi.

Dated:  October 19, 2023                                   Respectfully submitted,

*/s Z. W. Julius Chen*
Z.W. Julius Chen
  D.C. Bar No. 1002635
Hal S. Shapiro
  D.C. Bar No. 440709
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
chenj@akingump.com

Stephen M. Baldini
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, 44th Floor
New York, N.Y. 10036

*Counsel to the UAE Defendants*